UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **LUTELLIS SMITH** | * | **DOCKET NO. 06-1719** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner will be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## BACKGROUND

On January 22, 1997, Lutellis Smith filed an application for Disability Insurance Benefits. (Tr. 394). An Administrative Law Judge ("ALJ") denied the claim on July 1, 1997, and the Appeals Council denied review. *Id.*[1] On March 18, 1999, Smith filed the instant application for Disability Insurance Benefits. (Tr. 127-129). He alleged disability since July 2, 1997, due to nerve damage on the left side of his face, bone nose damage to the sinus passage, Tinel's trapped nerves in both elbows, swelling and aching joints in both hands, arthritis, severe headaches in the eyes and bottom of the skull, uncontrollable blood pressure, and degenerative disc disease in the

---

[1] It seems that on July 9, 1998, Smith petitioned this court to review the Commissioner's denial of benefits. *See, Smith v. Commissioner, Social Security Administration*, Civil Action Number 98-1267 (W.D. La.). However, the court dismissed the suit on August 17, 1999, for failure to prosecute. *Id.*

spine (neck and lower back). (Tr. 127, 136). The claims were denied initially and upon reconsideration. (Tr. 108, 116-119, 114, 121-123). Thereafter, plaintiff requested, and received a June 20, 2000, hearing before an Administrative Law Judge ("ALJ"). (Tr. 87-107). However, in a September 12, 2000, written decision, the ALJ found that Smith was not disabled under the Act. (Tr. 391-402). Smith unsuccessfully sought review before the Appeals Council, and thereafter filed suit in this court on August 14, 2002. (Tr. 429-430); *Smith v. Commissioner, Social Security Administration*, Civil Action Number 02-1749 (W.D. La.). On September 9, 2003, the court reversed the Commissioner's decision and remanded the matter for further proceedings to afford the Commissioner an opportunity to address a Veterans Administration Rating Decision that appeared in the record. (*See*, September 9, 2003, Judgment and July 22, 2003, Report and Recommendation; Tr. 444-449).

Meanwhile, on April 11, 2001, Smith filed a new application for benefits. (*See*, Tr. 416). The state agency denied the claim, as did the ALJ in a March 11, 2003, written decision. (Tr. 387, 413-426, 432-436). However, on March 17, 2004, the Appeals Council vacated the ALJ's March 11, 2003, decision, and consolidated the claim with Smith's March 18, 1999, application which by now had been remanded to the Commissioner. (Tr. 450-451). The Appeals Council in turn, remanded the consolidated applications to an ALJ to hold a new hearing and to issue a new decision in the matter. *Id*. Accordingly, a third hearing was held before an ALJ on March 9, 2005. (Tr. 590-626). On August 26, 2005, the ALJ denied Smith's benefits applications, finding at Step Four of the sequential evaluation process that he was able to return to past relevant work as a security guard. (Tr. 343-355). The Appeals Council denied Smith's request for review on August 19, 2006, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 336-338).

2

On October 4, 2006, Smith sought review before this court.[2] He contends that the Commissioner failed to provide substantial reasons for not according the opinion of the Veterans Administration and its doctors great or controlling weight as plaintiff's treating physicians.

## STANDARD OF REVIEW

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

---

[2] The period at issue here extends from the date of the ALJ's denial of plaintiff's 1997 application through the date that plaintiff was last insured for disability benefits. (*i.e.*, July 2, 1997- December 31, 2002). (*See*, Tr. 347).

ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous

form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding

is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ determined at Step Two of the sequential evaluation process that Smith suffered from severe impairments of degenerative joint disease with cervical spine disease, spondylosis, depression, anxiety disorder, somatization disorder, and hypertension.  (Tr. 350, 354).  However, the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

The ALJ next determined that Smith retained the residual functional capacity to perform the exertional demands of light work, but with moderately reduced ability to:  maintain appropriate interaction with the general public, set realistic goals, make plans independently of others, recognize hazards, and to take appropriate precautions.  (Tr. 353-354).[3]

Plaintiff takes issue with the weight that the ALJ accorded the medical findings and

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

disability determination of the Veterans Administration ("VA").[4] The centerpiece of plaintiff's challenge is a June 10, 1997, Rating Decision, wherein the VA determined that Smith met the requirements for a non-service connected pension. (Tr. 194-195).[5] The rating decision noted that Smith did not meet the scheduler requirements for disability, but due to his age, education, and occupational background, "an extraschedular permanent and total disability rating" was authorized." *Id*. The rating decision was almost exclusively premised upon an April 18, 1997, examination by a VA physician. *Id*. (Tr. 239-242).

A VA rating of total and permanent disability is not legally binding on the Commissioner, but it is evidence that is entitled to "a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(citing, *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980)). In most cases, the VA disability determination is entitled to "great weight," but the relative weight varies upon the factual circumstances of each case. *Id*. "Great weight" need not be accorded to a VA disability determination if the ALJ adequately explains his reasons for not doing so. *Id*.

In the case *sub judice*, the ALJ identified several reasons for not according controlling weight to the VA rating decision. (Tr. 352-353). First, the ALJ observed that the VA physicians

---

[4] The VA disability determination did not focus upon plaintiff's subsequently diagnosed mental impairments. Thus, plaintiff's challenge necessarily implicates solely the ALJ's assessment of plaintiff's physical impairments. Moreover, the record is replete with assessments of plaintiff's mental impairments which substantially support the ALJ's decision. (*See, e.g.*, Tr. 206-214, 298-301, 543-546, 569, 572, 584-589).

[5] On January 27, 2001, the VA subsequently denied Smith a service-connection disability. (Tr. 464-467). However, that decision simply concluded that Smith's impairments were not connected to his military service. (Tr. 464-467).

had never addressed the claimant's ability to perform work-related activities. *Id*. He also assigned less weight to the opinions of the VA physicians because several different healthcare providers were involved in this treatment. *Id*. Finally, the ALJ noted that plaintiff's credibility was undermined by subsequent medical reports that plaintiff suffered from a somatoform disorder. *Id*.

     Plaintiff takes issue with the ALJ's first two rationales. He argues that even if the VA physicians did not address his ability to perform work-related activities, the VA's decision effectively realized that he could no longer work. However, the relevance of the VA disability determination for purposes of social security disability depends upon the underlying medical evidence and rationale for the VA rating decision. In this case, the rating decision was almost exclusively predicated upon a single physical examination (April 23, 1997) which did not address Smith's ability to perform work-related functions. (Tr.194-195). For example, the April 23, 1997, examination indicated degenerative arthritis and disc disease in the cervical spine and in the lower lumbar spine. (Tr. 239-242). However, despite complaints of finger and hand pain, Smith was able to make a fist normally and his pinch and grip were normal. *Id*. His reflexes were 2+ and equal. *Id*. Hoffmann, Romberg and Babinski were unremarkable. *Id*. His position sense was normal. *Id*. Vibratory sense was significantly diminished in the fingers of the left hand and on the toes and top of the left foot, but neurological was otherwise normal. *Id*. The physician diagnosed degenerative arthritis and degenerative disc disease with recent acute strain of the cervical and lumbar spine and findings compatible with a left cervical radicular syndrome and a left lumbar radicular syndrome. *Id*.[6] There was evidence of degenerative arthritis in both thumbs as well

---

[6] However, the physician subsequently noted that Smith's failure to provide history of a gun shot wound to his left hand undermined the existence of a left cervical radicular involvement. *Id*.

untreated vascular hypertension. *Id*. X-rays, however, were normal. *Id*. Smith also suffered chronic prostatitis and chronic groin and pelvic pain, despite normal pelvic bones and x-rays. *Id*. He further complained of post-concussion headaches, but had no evidence of major injury. *Id*.

As authorized by the regulations, the ALJ weighed the opinions of the medical experts, but ultimately accorded greater weight to the relatively benign findings of Drs. Lu and Ebrahim.[7] The latter doctor examined Smith on May 11, 1999, at the request of Disability Determination Services. (Tr. 196-197). At that time, Smith principally complained of headaches, finger and toe numbness, join pain, and depression. *Id*. However, there was no evidence of degenerative disc disease, nor any neurological problem. *Id*. His musculoskeletal exam was essentially normal. *Id*.[8]

On November 15, 2001, James Lu, M.D. examined Smith at the request of Disability Examination Services. (Tr. 507-512). Smith reported no history of myocardial infarction or chest pain. *Id*. Smith further stated that he could walk about one mile before he had to stop due to muscle spasms, low back pain, and hip pain. *Id*. He reported intermittent pain in his left knee and left toe which was temporarily relieved by Ibuprofen. *Id*. However, the pain in his back and neck remained constant. *Id*. Smith felt irritable and depressed. *Id*. He experienced headaches about twice per week. *Id*. There was no tenderness over the cervical spine. *Id*. However, there was point tenderness over the L5 vertebral body and over the mid coccyx. *Id*. There also was tenderness over the left, first MTP joint, but no tenderness associated with the small joints or wrists. *Id*. Smith's motor strength was good and nonfocal. *Id*. His sensory exam was good. *Id*.

---

[7] The ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)(citation omitted).

[8] Dr. Ebrahim completed a range of motion chart with normal findings. (Tr. 202).

Lu diagnosed depression, partially compensated with medication; arthritis, primarily involving the neck, low back, and small joints; podagra on the left; and history of hypertension that was presently well-controlled on medication. *Id*. Lu opined that the main thing affecting Smith's ability to function was his depression and withdrawal. *Id*. He further cautioned that when Smith's arthritis was active, it interfered with his ability to use his hands and fingers, and affected his mobility. *Id*. Nevertheless, Dr. Lu did not assess any limitations. *Id*.[9]

Other VA treatment records provide further support for the ALJ's residual functional capacity. Progress notes from September 24, 1996, indicate that Smith complained that he was unable to return to his job, and constantly alluded to his need for an excuse to be off work secondary to his back. (Tr. 252). The physical therapist asked Smith to perform a certain exercise whereupon Smith complained of worsened pain. *Id*. However, Smith then volunteered to perform a different exercise which involved the same basic motions as the first. *Id*. The physical therapist believed that Smith's behavior was inconsistent. *Id*. The physical therapist wrote that Smith seemed to be seeking some type of disability due to his frequent requests for an excuse. *Id*. No further physical therapy was indicated at that time due to the inconsistencies between the objective findings and subjective complaints. *Id*. X-rays from April 1997 revealed no more than minor abnormalities. (Tr. 276-281). May 11, 1999, x-rays of the cervical and lumbar spine were normal. (Tr. 199-200).

Notes from April 12, 2002, indicate that Smith had worsening pain in his left neck, shoulder, and upper left back. (Tr. 562). His range of motion in his shoulder was limited due to pain. *Id*. Four days later, however, Smith reported that his pain was two on a ten point scale, and

---

[9] Contemporaneous x-rays of the lumbar spine revealed normal vertebral bodies, and well-maintained disc spaces. (Tr. 511). The x-rays also revealed mild scoliosis of the lumbar spine with concavity towards the right. *Id*.

that it was an average day. (Tr. 562). On a bad day, his pain was a seven. *Id*. The physical therapist diagnosed chronic decreased and painful cervical range of motion with intermittent radiculopathy involving C7-C8 nerve roots on the left side. (Tr. 563).

Less than two weeks later, Smith reported no pain at rest, and 2/10 with movement. (Tr. 564). Similarly, on May 6, 2002, Smith reported no pain at rest and 3/10 on average with activity. (Tr. 565). He had increased his ability to turn his head to the left. *Id*. On May 17, 2002, Smith was averaging one mild headache per week. (Tr. 566). His pain was 0/10 at rest, and 1/10 after turning his head. *Id*.

Progress Notes from June 11, 2002, reveal that Smith was doing fairly well. (Tr. 573). He exercised on a regular basis, and his blood pressure was under great control (113/80). *Id*. The physician diagnosed degenerative joint disease with cervical spine disease; spondylosis; hypertension, well controlled; hyperlipidemia, fair control; and depression. *Id*. A neurosurgical consultation was not indicated. *Id*.[10]

Plaintiff contends that the ALJ should have re-contacted the VA physicians to ascertain his work-related limitations. The regulations provide that the Commissioner will seek additional evidence or clarification from a treating source when: 1) the report from the source contains a conflict or ambiguity that needs to be resolved; 2) the report does not contain all of the necessary information; or 3) the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e). Only the second basis is potentially applicable here. However, the ALJ noted that plaintiff was seen by multiple VA medical personnel over the years, and thus it is unlikely that any one physician would have greater insight

---

[10] April 12, 2002, x-rays of the cervical spine indicated mild narrowing of the disc spaces from C3 to C7, and minimal posterior osteophyte changes. (Tr. 575). The impression was mild degenerative spondylosis with mild neural foraminal narrowing mainly on the left side. *Id*.

into plaintiff's limitations than a consultative examiner.[11]  Also, the Commissioner is not required to seek additional evidence from a treating source when he knows that the source cannot or will not provide the information.  20 C.F.R. § 404.1512(e)(2).[12]

In any event, to obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice.  *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996); *see also, Newton v. Apfel*; 209 F.3d 448 (5th Cir. 2000).  "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result."  *Id.* (Internal quotes omitted).  Smith has not made the requisite showing.[13]

In sum, the undersigned finds that the ALJ provided adequate and valid reasons for discounting the VA disability determination and associated medical report(s).  The undersigned

---

[11]  As discussed above, this was one of the reasons why they ALJ declined to accord great weight to the VA rating decision and underlying VA medical reports. (Tr. 353). Plaintiff contends that this rationale is invalid. However, length, nature, and extent of treatment and frequency of examination are all valid considerations for weighing medical opinions. 20 C.F.R. § 404.1527(d). The ALJ's explanation essentially summarized these considerations.

Plaintiff suggests that the ALJ should have expressly considered each of the §404.1527(d) factors before rejecting a treating physician's opinion. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). However, there are no treating physician opinions of record that are *per se* inconsistent with the ALJ's residual functional capacity assessment. In any event, an ALJ need not consider each of the § 404.1527(d) factors when, as here "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006 WL 2167675 (5th Cir. 08/02/2006)(unpubl.) (quoting *Walker v. Barnhart*, 158 Fed. Appx. 534 (5th Cir. 12/9/2005); *see also*, *Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.).

[12]  At least one physician remarked that she was unable to complete a form submitted by plaintiff's attorney. (Tr. 521).

[13]  At the latest hearing, Smith acknowledged that he could perform work-related functions, albeit more limited than those incorporated in the ALJ's residual functional capacity. (*See*, Tr. 602-603). However, these additional limitations were incorporated into hypotheticals posed to the vocational expert, who nonetheless opined that the additional limitations would not prevent the hypothetical claimant from performing a significant number of jobs that exist in the national economy. (Tr. 617-621). The ALJ acknowledged this alternative rationale in his decision. (Tr. 354).

further finds that the Commissioner's decision is supported by substantial evidence and is free of legal error.[14]

Accordingly, judgment will be entered AFFIRMING the Commissioner's decision to deny benefits and DISMISSING this matter with prejudice.

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of February, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[14] Plaintiff did not allege any errors with the remaining steps of the sequential evaluation process.

13